JAMES T. FOUDY & others[1] vs. AMHERST-PELHAM REGIONAL
SCHOOL COMMITTEE.

Hampshire.   January 7, 1988. — April 14, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*School and School Committee,* Termination of employment, Public record,
   Open meetings. *Public Board. Open Meeting Law.*

Although a school committee had the authority under G. L. c. 39, § 23B, to
   keep secret the minutes of executive sessions called to discuss the dismis-
   sal of an employee and the subsequent litigation involving his dismissal
   "as long as publication may defeat the lawful purposes of the executive
   session[s]," the committee, in accordance with the limit placed on its
   power by § 23B, could not prevent release of the minutes sought by the
   plaintiffs in a civil action, where, by the time the action was commenced,
   the employee had resigned and the litigation involving the dismissal was
   terminated, so that the lawful purposes for which the sessions were
   convened no longer existed; where nothing in the language of G. L.
   c. 71, § 42, permitting school committees to hold dismissal hearings in
   executive session, conflicted with the provision in G. L. c. 39, § 23B,
   governing the publication of the minutes of executive sessions; and
   where the school committee offered no evidence that the release of the
   minutes would defeat the purpose of holding executive sessions or that
   there was any other continued justification for nondisclosure. [182-184]

CIVIL ACTION commenced in the Superior Court Department
on November 12, 1985.

The case was heard by *Raymond R. Cross, J.*

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Diana S. Gondek* for the defendant.

*Benjamin A. Barnes* for the plaintiffs.

LIACOS, J. The plaintiffs, three registered voters of Hamp-
shire County, who are also the editors of the Daily Hampshire

[1] Donald Houghton and Edward K. Shanahan.

Gazette newspaper, brought suit against the defendant, Amherst-Pelham Regional School Committee (school committee). The suit sought the release of the minutes of private executive sessions which the defendant held on December 3, 1984, February 11 and 28, 1985, March 9, 11 and 12, 1985, and April 9, 1985. This case was consolidated with a pending action brought by the district attorney for the Northwestern District against the same defendant.[2] On January 26, 1987, a judge of the Superior Court in Hampshire County entered judgment for the plaintiffs and ordered the school committee to make public the minutes of the executive sessions of December 3, 1984, February 11 and 28, 1985, and March 9 and 11, 1985. The school committee appeals.

The pertinent facts are as follows. The school committee had employed John Burgess as director of pupil personnel services (director) from August, 1975, until he resigned, effective July 1, 1985. Prior to the resignation of the director, the school committee had confronted him with allegations that he had engaged in acts of sexual harassment of other school employees. On December 3, 1984, the school committee went into executive session, purportedly pursuant to G. L. c. 39, § 23B,[3] for the stated purpose of discussing the reputation of the

---

[2]The case brought by the district attorney has been settled. The school committee released to the district attorney the minutes of the March 12, and April 9, 1985, executive sessions, and he rescinded his request for the other dates. The minutes of the March 12, and April 9, 1985, executive sessions are not a subject of this appeal.

[3]For all times relevant to this case, G. L. c. 39, § 23B, as amended through St. 1978, c. 372, § 10, provided in pertinent part: "Executive sessions may be held only for the following purposes: (1) To discuss the reputation, character, physical condition or mental health rather than the professional competence of an individual, provided that the individual involved in such executive session has been notified in writing by the governmental body, at least forty-eight hours prior to the proposed executive session. . . . (2) To consider the discipline or dismissal of, or to hear complaints or charges brought against, a public officer, employee, staff member, or individual, provided that the individual involved in such executive session pursuant to this clause has been notified in writing by the governmental body at least forty-eight hours prior to the proposed executive session. . . . (3) To discuss strategy with respect to collective bargaining or litigation if an open meeting may have a detrimental effect on the bargaining

director.[4] The director had been notified of his right to be present at the meeting. After the December 3, 1984, meeting, the director was informed that the school committee would meet on February 11, 1985, for the purpose of considering whether to dismiss him for conduct unbecoming a teacher.

On February 11, 1985, the school committee held a hearing pursuant to G. L. c. 71, § 42.[5] This hearing, held in executive session, was continued to February 28, 1985, and to March 9 and 11, 1985. During the March 11, 1985, hearing the school

---

or litigating position of the governmental body, and to conduct collective bargaining sessions. (4) To discuss the deployment of security personnel or devices. (5) To investigate charges of criminal misconduct or to discuss the filing of criminal complaints. (6) To consider the purchase, exchange, lease or value of real property, if such discussions may have a detrimental effect on the negotiating position of the governmental body and a person, firm or corporation. (7) To comply with the provisions of any general or special law or federal grant-in-aid requirements."

Several paragraphs of the statute have since been amended, but none of the amendments affects this case.

[4] The trial judge found that the true purpose of the December 3, 1984, executive session was not to discuss reputation, but to consider the discipline or dismissal of, or to hear complaints or charges brought against, an employee/staff member. G. L. c. 39, § 23B (2). The judge ordered the school committee to revise its minutes to reflect this finding. The school committee does not contest this aspect of the judge's finding and order.

[5] Although the statute has since been amended, at the relevant time, G. L. c. 71, § 42, as amended through St. 1972, c. 464, § 2, provided in part: "The school committee may dismiss any teacher, but no teacher and no superintendent, other than a union superintendent and the superintendent of schools in the city of Boston, shall be dismissed unless by a two thirds vote of the whole committee. . . . In every such town a teacher . . . employed at discretion under section forty-one . . . shall not be dismissed, except for inefficiency, incapacity, conduct unbecoming a teacher or superintendent, insubordination or other good cause, nor unless . . . he shall have been notified of such intended vote; nor unless, if he so requests, he shall have been furnished by the committee with a written charge or charges of the cause or causes for which his dismissal is proposed; nor unless, if he so requests, he has been given a hearing before the school committee *which may be either public or private at the discretion of the school committee* and at which he may be represented by counsel, present evidence and call witnesses to testify in his behalf and examine them; nor unless the charge or charges shall have been substantiated; nor unless, in the case of a teacher, the superintendent shall have given the committee his recommendations thereon" (emphasis supplied).

committee agreed that, if the director were to resign, the school committee would keep secret the executive session minutes of the hearings. The school committee also agreed to expunge all references to the dismissal from the director's personnel records. On March 14, 1985, the director submitted his letter of resignation to the superintendent of schools. At an open meeting on April 9, 1985, the school committee voted to approve the resignation of the director. In November, 1985, the plaintiffs filed this action seeking the release of the minutes.

The school committee argues that the relevant provisions of the open meeting law, G. L. c. 39, §§ 23A, 23B, 23C, and 24, give the school committee authority and discretion to keep secret the executive session minutes. The school committee points to language in G. L. c. 39, § 23B, as appearing in St. 1978, c. 372, § 11, which provides in pertinent part: "A governmental body shall maintain accurate records of its meetings, setting forth the date, time, place, members present or absent and action taken at each meeting, including executive sessions. The records of each meeting shall become a public record and be available to the public; *provided, however, that the records of any executive session may remain secret as long as publication may defeat the lawful purposes of the executive session, but no longer*" (emphasis supplied).[6]

While it is true that the statute gives the school committee authority and discretion to keep secret the minutes of executive sessions, there is a limit placed on the committee's power. The minutes may be kept secret only "as long as publication may defeat the lawful purposes of the executive session, but no longer." The lawful purposes of the executive sessions called by the school committee were to discuss the dismissal of the director and to discuss the litigation that the school committee was engaged in with the director.[7] By the time this case was filed, the director had resigned, and the litigation was terminated. Thus, the lawful purposes, as defined by the

---

[6]This language of § 23B is in addition to that quoted in note 3, *supra*.

[7]In February, 1985, the director brought suit against the school committee, alleging breaches of the collective bargaining agreement and violations of G. L. c. 12, § 11I, and 42 U.S.C. § 1983 (1982).

judge, see note 4, *supra,* for which the executive sessions were held were no longer extant.

The school committee also contends that G. L. c. 71, § 42, gives the school committee final authority and discretion to determine whether dismissal hearings will be held in open or closed sessions. The pertinent part of § 42 provides: "a teacher or superintendent . . . shall not be dismissed . . . unless, if he so requests, he has been given a hearing before the school committee which may be either public or private at the discretion of the school committee." The school committee asserts that this portion of § 42 conflicts with, and supersedes, the provision in G. L. c. 39, § 23B, that governs the publication of the minutes of executive sessions.[8]

In support of its contention as to the impact of § 42, the school committee cites *Kurlander* v. *School Comm. of Williamstown,* 16 Mass. App. Ct. 350 (1983), which, it says, held that an inconsistency existed between the open meeting law, G. L. c. 39, §§ 23A, 23B, 23C, and 24, and G. L. c. 71, § 42. In *Kurlander, supra* at 360-361, the court simply ruled that deliberations on the dismissal of a teacher could be held in private even though the hearing had been held in public at the request of the teacher. *Kurlander* is inapposite to this case. The *Kurlander* court did not address the issue before us, namely, whether the minutes of an executive session must be released after the purposes of executive deliberation have been served. Similarly, *Perryman* v. *School Comm. of Boston,* 17 Mass. App. Ct. 346, 351-352 (1983), on which the school committee relies, does not decide the issue before us. General Laws c. 71, § 42, is silent with respect to the language of G. L. c. 39, § 23B, dealing with the release of the minutes of executive sessions. As to this issue, the statutes are not in conflict.[9]

---

[8] In support of its argument, the school committee cites G. L. c. 39, § 24, which provides: "The provisions of this chapter shall be in force only so far as they are not inconsistent with the express provisions of any general or special law; and, so far as apt, shall apply to districts as defined in section one A of chapter forty." G. L. c. 39, § 24, as amended by St. 1970, c. 78, § 2.

[9] The director made a motion to intervene pursuant to Mass. R. Civ. P. 24 (a) and (b), 365 Mass. 769 (1974). His motion was denied, and he did not

In its final argument, the school committee contends that the purpose of holding executive sessions, closed to the public, would be defeated and frustrated if the minutes of those private sessions later were made public. The school committee offered no evidence before the judge that the release at this time of the executive session minutes would defeat the purpose of having an executive session, or that there is continued justification for nondisclosure. The burden of showing such a need for nondisclosure is on the school committee. See *Attorney Gen.* v. *School Comm. of Northampton,* 375 Mass. 127, 130 (1978). So long as the lawful purpose that required the school committee to go into executive session still exists, the minutes may remain private. The school committee may conduct its business out of the glare of publicity. Once that purpose evaporates, however, so does the reason for continued nondisclosure. It is essential to a democratic form of government that the public have broad access to the decisions made by its elected officials and to the way in which the decisions are reached. The open meeting law seeks "to eliminate much of the secrecy surrounding the deliberations and decisions on which public policy is based." *Ghiglione* v. *School Comm. of Southbridge,* 376 Mass. 70, 72 (1978). Publication of the minutes of the executive session, after the lawful purpose for which the session was convened no longer exists, does not defeat the use of executive sessions.

The school committee acted honorably in promising to the director that it would keep the executive minutes private. However, the school committee did not have the power to carry out its promise in perpetuity.

*Judgment affirmed.*

appeal. The school committee argues that the director's privacy interest, see G. L. c. 214, § 1B (1986 ed.), takes precedence over, and would be invaded by, the publication of the executive session minutes. The director is not a party to this action, and thus the privacy interest question is not before us. For the same reason, we do not reach the school committee's argument regarding the exemption from public disclosure of personnel records. See *Globe Newspaper Co.* v. *Boston Retirement Bd.,* 388 Mass. 427 (1983).